UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:12-CV-00205-GNS-HBB


RICARDO RAMIREZ and
KIM WADE, Co-Personal Representatives
of the Estate of Malana Sneed Ramirez                          PLAINTIFFS


v.


BOLSTER & JEFFRIES HEALTH CARE GROUP, LLC                       DEFENDANT


## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment (DN 71),

Plaintiffs' Motion for Summary Judgment (DN 96), Defendant's Motion to Strike (DN 104),

Defendant's Motion for Leave to File Excess Pages (DN 107), Plaintiffs' Motion for Leave to

Resubmit (DN 125), Plaintiffs' Motion for Leave to Resubmit (DN 128), and Defendant's

Motion to Strike (DN 131).  The motions are ripe for adjudication.  For the reasons outlined

below, Defendant's Motion for Leave to File Excess Pages is **GRANTED**; Defendant's Motion

for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**; and Plaintiffs'

Motion for Summary Judgment, Defendant's Motions to Strike, and Plaintiffs' Motions for

Leave to Resubmit are **DENIED**.

### I.        STATEMENT OF FACTS AND CLAIMS

In March 2011, Malana Sneed Ramirez ("Ramirez") was hired as a certified nursing

assistant ("CNA") by Defendant Bolster & Jeffries Health Care Group, LLC ("Bolster &

Jeffries") at its Hearthstone Place nursing home facility in Elkton, Kentucky.  (1st Am. Compl. ¶

9, DN 19; Kemp Decl. ¶ 5, DN 71-2).  Hearthstone Place has two different levels of care—

skilled care and personal care—and residents' rooms are segregated on this basis. (Kemp Dep. 19:5-7, Mar. 1, 2016, DN 85-3). When Ramirez started, she worked as a CNA on the skilled-care side of the facility where her duties included "push[ing], pull[ing], mov[ing], and/or lift[ing] a minimum of 75 pounds . . . ." (Kemp Dep. 36:19-25; Evans Decl. ¶ 4, DN 71-3; Kemp Decl. ¶ 7; Kemp Decl. Ex. C, DN 71-2). "[E]ach resident has a plan of care that specifies what kind of care they receive, whether it be a two-person transfer, one-person transfer, or hoyer lift, how much assistance that they need during bathing, grooming, [and] brushing their teeth." (Kemp Dep. 14:2-6). The CNAs are responsible for reviewing each patient's plan of care and making sure that the care is received during the CNA's shift. (Kemp Dep. 13:13-14:18; Kemp Decl. ¶ 6, DN 71-2; Evans Decl. ¶ 3).

Working as a CNA on the skilled-care side of Hearthstone Place, Ramirez had an optional work schedule under what is referred to as the "Baylor program." (Kemp Decl. Ex. M, DN 71-2). Unlike a traditional work schedule, under the Baylor program a CNA would work a twelve-hour shift on both Saturday and Sunday but would be paid for an additional eight-hour shift for each of those days worked.[1] (Kemp Decl. Ex. M).

On April 19, 2012, Ramirez requested and was approved for FMLA leave for the upcoming birth of her daughter. (Kemp Decl. ¶ 15, DN 71-2; Kemp Decl. Ex. J, DN 71-2). According to Hearthstone Place's records, Ramirez's FMLA leave was to begin on July 9, 2012. (Kemp Decl. ¶ 20). In May 2012, Ramirez's supervisors purportedly learned that she refused to transfer or lift three residents. (Kemp Dep. 74:8-76:16, 163:23-164:5; Evans Decl. ¶¶ 7-9, DN 71-3; Rose Decl. ¶¶ 4-5, DN 71-5). Ramirez disputes the report and asserts that Katherine Evans, a former administrator employed by Defendant, stated the transfer was done for the safety

---

[1] Because Ramirez's disciplinary history during her first year of employment is not relevant to the pending motions, it is not discussed.

of Ramirez's unborn child. (Pls.' Mot. Leave Conventionally File Exs. Ex. 1, at 16, DN 83-2).

Ramirez was then transferred to a non-lifting position on the personal-care side of the facility, which was part-time and paid $1.50 per hour less than the skilled-care job. (Kemp Dep. 93:3-15; Evans Decl. ¶¶ 9-10; Kemp Decl. ¶ 16).

After the transfer, Ramirez received a written disciplinary report for failing to notify the family of a resident of the resident's refusal of care on May 14, 2012.[2] (Kemp Dep. 102:5-13; Kemp Decl. Ex. K, DN 71-2). On May 25, 2012, Ramirez left her shift early. (Kemp Decl. ¶ 19; Kemp Decl. Ex. L, DN 71-2). On May 30, 2012, Ramirez was counseled by Director of Nursing Wayne Charbonneau about an issue involving resident privacy. (Kemp Decl. ¶ 19; Kemp Decl. Ex. L). She was also asked to refrain from discussing work matters with residents. (Kemp Decl. Ex. L).

In July 2012, Ramirez's daughter was born and she took FMLA leave. (R. Ramirez Dep. 23:9-12, Sept. 18, 2015, DN 85-7). Sometime that month, Ramirez contacted the U.S. Equal Employment Opportunity Commission ("EEOC"), and on August 1, 2012, Ramirez signed an EEOC Intake Questionnaire claiming she was demoted because of her pregnancy. (Smith Decl. Attach. 12-16, DN 115-1). The EEOC subsequently prepared a Charge of Discrimination form, but Ramirez never signed it. (Smith Decl. Attach. 10).

After taking FMLA leave for her daughter's birth, Ramirez returned to work on September 15, 2012. (Kemp Decl. ¶ 21). Upon return, she was given two options: work on the skilled-care side in the Baylor program just as she had before the transfer in May, or resume the personal-care position she had when her FMLA leave began. (Kemp Dep. 113:15-114:4).

---

[2] On the personal-care side, staff were required to notify family members and document when a resident refused an item on the plan of care. (Kemp Dep. 103:24-104:10; Kemp Decl. Ex. K).

Ramirez chose the skilled-care job and elected to participate in the Baylor program. (Lyon Dep. 31:1-10, 41:21-42:14; Kemp Dep. 113:24-114:4, 117:6-8).

The next documented performance issue occurred more than two months after Ramirez returned from FMLA leave. In late November 2012, she received a verbal notice for being absent from work on November 24 and 25. (Kemp Dep. 122:4-123:7; Kemp Decl. Ex. N, DN 71-2). On December 12, 2012, Ramirez filed this action alleging sex and pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17, and the Kentucky Civil Rights Act ("KCRA"), KRS Chapter 344. (Compl. ¶¶ 37-56, DN 1). She also alleged disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, and the KCRA, violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654, and retaliation under KCRA.[3] (Compl. ¶¶ 57-78).

On April 21, 2013, the daughter of a resident under Ramirez's care purportedly complained that she found her mother with feces on her.[4] (Kemp Decl. Ex. O, DN 71-2; Kemp Dep. 126:16-18; Holder Decl. ¶¶ 3-4; Charbonneau Decl. ¶¶ 7-11, DN 71-4). Because of this incident and Ramirez's alleged conduct in response to the incident, one of the owners of the

_____

[3] While Plaintiffs asserted a separate claim for punitive damages in Count X of the Complaint and First Amended Complaint, punitive damages is not a cause of action; rather it is a form of damages available for violations of constitutional rights and the commission of tortious acts. *See Dalton v. Animas Corp.*, 913 F. Supp. 2d 370, 378-79 (W.D. Ky. 2012) ("[A] claim for punitive damages is not a separate cause of action, but a remedy potentially available for another cause of action." (citation omitted)). In addition, to the extent that Plaintiffs seek punitive damages relating to their KCRA claims, "punitive damages are not an unavailable remedy . . . ." *Brooks v. Lexington-Fayette Urban Cty. Hous. Auth.*, 132 S.W.3d 790, 808 (Ky. 2004).

[4] While Ramirez's sister, Plaintiff Kim Wade ("Wade"), testified that Ramirez believed that the resident had chocolate pudding or pie under her nails and on her bedding, this testimony does not change the fact that the resident's family reported that the substance was feces. (Wade Dep. 59:6-22, Oct. 19, 2015, DN 85-1; Kemp Dep. 127:1-9; Holder Decl. ¶¶ 4-5, DN 71-9). Further, at her unemployment insurance hearing, Ramirez did not contest the fact that the resident had feces on her. (Pls.' Mot. Leave Conventionally File Exs. Ex. 2, at 26, DN 83-2).

facility, Nancy Bolster ("Bolster"), decided to terminate Ramirez's employment. (Kemp Dep. 139:14-140:5, 150:25-151:2; Bolster Decl. ¶ 9, DN 71-1).

After the termination, Ramirez amended the Complaint to assert an additional claim of wrongful termination based on a violation of KRS 216B.165. (1st Am. Compl. ¶¶ 81-90). During the pendency of this action, Ramirez died, and her co-personal representatives revived this action. (Order 1, DN 38; Order 4, DN 73). Following discovery, both parties have moved for summary judgment and have filed other related motions, which are ripe for decision.

## II.      JURISDICTION

This Court has subject-matter jurisdiction of this matter based upon federal question jurisdiction. *See* 28 U.S.C. § 1331. In addition, the Court has supplemental jurisdiction over Plaintiffs' state-law claims. *See* 28 U.S.C. § 1367(a).

## III.      DISCUSSION

### A.      Defendant's Motion to Strike (DN 104)

Defendant has raised numerous objections to evidence placed in the record by Plaintiffs and has moved to strike various exhibits filed by Plaintiffs because the exhibits are inadmissible. (Def.'s Mot. Strike 5-22, DN 104 [hereinafter Def.'s Mot. Strike – Evidence]). This motion, however, is improper.

Fed. R. Civ. P. 56(c)(2) allows a party to object to summary judgment evidence that cannot be presented in a form that would be admissible at trial. Fed. R. Civ. P. 56(c)(2). Since the 2010 amendments to Rule 56, "[t]here is no need to make a separate motion to strike." Fed. R. Civ. P. 56, advisory committee note of 2010. "[M]otions to strike are generally disfavored. Rather than striking material, a court may simply ignore inadmissible evidence." *Trs. of the Plumbers & Steamfitters Local 184 Supplemental Pension Plan v. Ivitts Plumbing Contractors,*

*Inc.*, No. 5:12-CV-112-TBR, 2014 WL 3905589, at *3 (W.D. Ky. Aug. 11, 2014) (citation omitted).

In ruling on a motion for summary judgment, the Court must consider only evidence that would be admissible at trial. *See McFeeley v. United States*, 700 F. Supp. 414, 418 n.1 (S.D. Ind. 1988) (citing Fed. R. Civ. P. 56(e)). This case is complicated by Ramirez's untimely passing; the Court, however, is still bound by the rules of evidence and "[i]nadmissible hearsay evidence cannot be considered." *Woida v. Genesys Reg'l Med. Ctr.*, 4. F. Supp. 3d 880, 903 (E.D. Mich. 2014) (citations omitted).

In support of their dispositive motion and in opposition to Defendant's dispositive motion, Plaintiffs rely on audio recordings from three different days of testimony from the unemployment insurance hearing held following Ramirez's termination.[5] (Pls.' Mot. Leave File Conventionally File Exs. Ex. 1, DN 83-1). Defendant has objected to the consideration of those recordings based on hearsay and authentication issues. (Def.'s Mot. Strike – Evidence 5-8). Because Ramirez was not deposed in this case, it is understandable that Plaintiffs would seek to rely on her testimony in that administrative proceeding. That testimony, however, is hearsay under Fed. R. Evid. 801 which is inadmissible unless an exception or exclusion applies. *See* Fed. R. Evid. 802.

Because of Ramirez's unavailability to testify, the Court must determine whether the hearsay exception in Rule 804(b)(1) applies. In relevant part, the rule provides:

> The following are not excluded by the rule against hearsay if the declarant is unavailable as a witness:

---

[5] Under Fed. R. Civ. P. 56(c), it was Plaintiffs' duty to "cit[e] to particular parts of materials in the record," which included the audio recordings from the administrative proceeding but they have failed to do so. Fed. R. Civ. P. 56(c)(1)(A). It is not the Court's responsibility to scour the recordings without specific citations to the locations in the audio recordings where the pertinent testimony may be found.

**(1)    Former Testimony.**  Testimony that:

    **(A)**    was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and

    **(B)**    is now offered against a party who had—or, in a civil case, whose predecessor in interest had—an opportunity and similar motive to develop it by direct, cross-, or redirect examination.

Fed. R. Evid. 804(b)(1).  While Ramirez's testimony in an administrative proceeding satisfies the first element, the second element has arguably been met because both parties were represented by counsel during the approximately three-hour hearing held over multiple days, and counsel actively questioned witnesses during that hearing.  For the purpose of ruling on the pending motions for summary judgment, the Court will assume—but not rule—that the testimony from the unemployment insurance hearing would be admissible at trial.

As noted by Defendant, the transcripts from the unemployment insurance hearing apparently created by Plaintiffs are hearsay and also suffer from authentication issues.  (Def.'s Mot. Strike – Evidence 5-8).  One version purports to be transcribed from each of the three days of the hearing.  (Pls.' Mot. Leave Conventionally File Exs. Ex. 1).  Other transcripts contain annotations and editorial comments that were clearly not part of the original testimony.  (Powell Aff. Ex. 1-A, DN 128-2; Powell Aff. Ex. 1-I, DN 128-2).  Like the testimony from the hearing itself, the Court will assume that the transcripts (without the editorials, of course) would be presented in admissible form for trial.  *See Lawyers All. For Nuclear Arms Control-Philadelphia Chapter*, 766 F. Supp. 318, 323-24 (E.D. Pa. 1991) ("When addressing a summary judgment motion the court may consider evidence that would not be admissible at trial only if the court finds that the evidence can be reduced to a form that would be so admissible."  (citations omitted)).  *See also* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.").

Finally, the affidavits executed by Plaintiffs' counsel are not admissible evidence. (Powell Aff., DN 127-2; Powell Aff., DN 128-2). Plaintiffs' counsel does not have personal knowledge of the events alleged in the Amended Complaint. *See* Fed. R. Evid. 602; Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 3.05[1][a] (5th ed. 2013) ("All testimony must be based on a witness' observation of the matter about which he is testifying." (internal quotation marks omitted) (citation omitted)). In addition, counsel's characterization of witnesses' testimony is not personal knowledge and is likely based on hearsay. *See Hack v. H.V.R. Parts, Inc.*, 742 F. Supp. 283, 286 (W.D. Pa. 1990) ("The affidavit must be based on personal knowledge and not on the hearsay statement of another purported witness." (citing *Sellers v. M. C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988))); *see also* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). Accordingly, the Court will not consider counsel's affidavits in ruling on the pending motions.

As explained above, Fed. R. Civ. P. 56(c)(2) requires the Court to consider only evidence that would be admissible at trial in addressing the merits of the parties' summary judgment motions. The Court will assume for the purpose of the pending dispositive motions that the recordings of the unemployment insurance hearing would be admissible, but counsel's affidavit would not be admissible. Defendant's motion to strike, however, will be denied.

## B.     Defendant's Motion to Strike (DN 131)

Defendant has also moved to strike Plaintiffs' Response to Defendant's Motion for Summary Judgment (DN 127). (Def.'s Mot. Strike, DN 131). The Court had previously struck Plaintiffs' response as being noncompliant with Court rules and, as Defendant notes, Plaintiffs'

revised response filed pursuant to that order neither reflects full respect for this Court's prior order nor the requirements of Court rules.  (Order 1-2, DN 124; Def.'s Mot. Strike 1-2, DN 131).

The Court does not believe, however, it would be in the interest of justice to further delay its ruling on the pending motions and require Plaintiffs to resubmit.  While the Court elects not to strike Plaintiffs' response in this instance, Plaintiffs' counsel is warned that she must follow the rules of this Court as a member of the bar.  This Court considers modifying font sizes, line spacing, and margins as blatant attempts to circumvent the page limitations imposed by LR 7.1, and such attempts will not be tolerated.  An appropriate motion seeking leave shall be filed prior to filing anything with the Court that does not comply with Federal Rules of Civil Procedure or this Court's Local Rules.  Defendant's motion to strike, however, will be denied.

### C.   Defendant's Motion for Leave to File Excess Pages (DN 107)

Defendant has moved for leave to file a reply that exceeds the length permitted by LR 7.1(d) by one page.  (Def.'s Mot. Leave File Excess Pages, DN 107).  Despite objection, and in light of Plaintiffs' efforts to circumvent the page limitation, Defendant's request for leave to file a reply with one additional page beyond what LR 7.1(d) permits is reasonable.  The motion will be granted.

### D.   Plaintiffs' Motion for Leave to Resubmit (DN 125)

Plaintiffs have also moved for the Court to allow them to file their objections to evidence in the record.  (Pls.' Mot. Leave Resubmit, DN 125).  The proposed filing consists of 28 pages of evidentiary objections arguing the weight of the evidence presented.  Having reviewed it, however, nothing in this submission changes the Court's analysis below.  It contains nothing more than Plaintiffs' nitpicking of Defendant's evidence in support of the motion for summary judgment and quarreling with Defendant's characterization of that testimony.  The ultimate

effect of this submission is to increase the pages allotted for Plaintiffs' response to Defendant's dispositive motion from 40 to 68 pages.

In ruling on the dispositive motions, the Court will consider only evidence that could be submitted in a form that would be admissible at trial. Accordingly, this motion will be denied.

### E.    Plaintiffs' Motion for Leave to Resubmit (DN 128)

In Plaintiffs' Motion for Leave to Resubmit (DN 128), they seek leave to refile the response that the Court previously struck from the record as being in violation of LR 7.1. (Order, DN 124). As stated above, members of the bar are expected to comply with Court rules, and this motion is not well-taken in light of the Court's previous order. Because Plaintiffs have already filed a response to Defendant's summary judgment motion and had ample opportunity to respond to Defendant's dispositive motion, the Court will deny this motion. Having previously stricken Plaintiffs' 47-page response and 28-page "exhibit" containing additional legal arguments opposing the motion, the Court will deny Plaintiffs' motion to resubmit the same substance in a 28-page addendum to their present 40-page response. (Order, DN 124).

### F.    Plaintiffs' Motion for Summary Judgment (DN 96)

Plaintiffs assert that they are entitled to summary judgment on the basis that Defendant's defenses are barred by collateral estoppel, res judicata, claim preclusion, and judicial estoppel. (Pls.' Mot. Summ. J. 4-18, DN 96). As outlined below, this motion will be denied.

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of material fact that would preclude entry of judgment for the moving party as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of stating the basis for the motion and identifying evidence in the record that demonstrates an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the

moving party satisfies its burden, the non-moving party must then produce specific evidence proving the existence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). Rather, the non-moving party must present specific facts proving that a genuine factual issue exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

Plaintiffs' reliance on collateral estoppel, res judicata, and claim preclusion contradicts well-established law as to the effect of the administrative process applicable to unemployment insurance claims. As this Court has noted, "the Sixth Circuit has held that a Kentucky Unemployment Insurance Commission's decision awarding a plaintiff unemployment benefits does not 'have issue-preclusive effect upon Title VII claims.'" *Thomas v. Kmart Corp.*, No. 4:04CV-171-M, 2006 WL 2802266, at *8 (W.D. Ky. Sept. 28, 2006) (quoting *Hicks v. Floyd Cty. Bd. of Educ.*, 99 F. App'x 603, 604 (6th Cir. 2004) (per curiam)). Similarly, as the Kentucky Supreme Court has explained:

> An unemployment compensation hearing is designed to adjudicate promptly a narrow issue of law, and to grant a limited remedy to an unemployed worker. The use of an unemployment compensation decision to bind the parties in a subsequent . . . action . . . would be wholly inappropriate, and would frustrate the underlying purpose of . . . collateral estoppel. If findings entered at an unemployment compensation hearing may be used to establish the employer's

> liability . . . in a subsequent lawsuit, the employer would have a strong incentive to use its superior resources consistently to oppose a discharged employee's claim for unemployment benefits. Issues presented . . . will be contested strongly, and the hearings will become lengthy and more detailed, and will no longer be suited to the prompt resolution of unemployment compensation claims. Judicial economy would be frustrated, rather than improved, as many unemployment compensation hearings [would] become forums in which claims for unlawful or unconstitutional discharge are tried.

*Berrier v. Bizer*, 57 S.W.3d 271, 281 (Ky. 2001) (internal quotation marks omitted) (quoting *Bd. of Educ. of Covington v. Gray*, 806 S.W.2d 400, 403 (Ky. 1991)). *See also Hicks v. Floyd Cty. Bd. of Educ.*, 99 F. App'x 603, 605 (6th Cir. 2004) (holding that the Kentucky Unemployment Insurance Commission's determination that the employee was terminated without good cause was irrelevant in the employee's subsequent civil suit alleging violations under Title VII and 42 U.S.C. § 1983). Thus, Ramirez's unemployment claim cannot be used in the present action as the basis of collateral estoppel, res judicata, or claim preclusion.

The Court likewise concludes that summary judgment should be denied as to the applicability of judicial estoppel in this case. As the Sixth Circuit has explained:

> The doctrine of judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position either as a preliminary matter or as part of a final disposition. A court should also consider whether the party has gained an unfair advantage from the court's adoption of its earlier inconsistent statement. Although there is no set formula for assessing when judicial estoppel should apply, it is well-established that at a minimum, a party's later position must be clearly inconsistent with its earlier position for judicial estoppel to apply.

*Gen. Conference Corp. of Seventh-Day Adventists v. McGill*, 617 F.3d 402, 414 (6th Cir. 2010) (quoting *Lorillard Tobacco Co. v. Chester, Willcox & Saxbe, LLP*, 546 F.3d 752, 757 (6th Cir. 2008)). In general, "[j]udicial estoppel is applied with caution to avoid impinging on the truth-seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement." *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218

(6th Cir. 1990). The Sixth Circuit has recognized that judicial estoppel may apply to assertions made during administrative proceedings. *See Smith v. Montgomery Ward & Co.*, 388 F.2d 291, 292 (6th Cir. 1968).

Plaintiffs cite nothing in support of their claim of judicial estoppel. In their motion, Plaintiffs argue that:

> Defendants [sic] should be judicially estopped from now asserting that Ms. Ramirez [sic] demotion was due to insubordination and the alleged hearsay refusal. Since Defendants [sic] in the Unemployment Hearings took the position that Ms. Ramirez [sic] demotion had no relevancy pertaining to her termination or any alleged misconduct contained within her personnel file, they [sic] should not now be able to assert a direct refusal, and insubordination, based entirely upon inadmissible hearsay.

(Pls.' Mot. Summ. J. 18). Plaintiffs' argument disregards the nature of the unemployment insurance hearing. The sole purpose of that hearing was determine whether Ramirez was ineligible for unemployment due to the employer's stated basis for her termination under KRS 341.370. *See Ky. Unemployment Ins. Comm'n v. Melvin's Grocery Co.*, 696 S.W.2d 791, 792 (Ky. App. 1985) ("The primary key in resolving conflicts such as this must be based on who causes the employee to quit."). Defendant objected to evidence regarding Ramirez's transfer, which occurred almost a year before her termination, as being irrelevant because it did not rely on the transfer as a basis for her termination. (Def.'s Resp. Mot. Summ. J. 7-8, DN 106). Defendant's objection at the unemployment insurance hearing does not warrant the application of the doctrine of judicial estoppel in this case.

For this reason, Plaintiffs are not entitled to judgment as a matter of law on the basis of judicial estoppel. The motion will be denied.

### G.  Defendant's Motion for Summary Judgment (DN 71)

Defendant has moved for summary judgment on Plaintiffs' claims, each of which is addressed below.

#### 1.  *Exhaustion of Administrative Remedies*

As a threshold issue, Defendant argues that Ramirez failed to exhaust her administrative remedies as to the federal claims.  (Def.'s Mem. Supp. Mot. Summ. J. 14-15, DN 71).  Both Title VII and Title I of the ADA require the filing of a charge with the Equal Employment Opportunity Commission ("EEOC") as a prerequisite to pursuing a discrimination claim under those laws in federal court.[6]  *See* 42 U.S.C. § 2000e-5(e); *id.* § 12117(a).

To address this issue, the Court must consider the events relating to Ramirez's interaction with the EEOC.  On August 2, 2012, the EEOC received Ramirez's Intake Questionnaire asserting discrimination based upon pregnancy.  (Smith Decl. Attach. 12-16, DN 115-1).  On August 14, 2012, the EEOC sent a Notice of Charge of Discrimination to Defendant, which indicated that no response was necessary.  (Smith Decl. Attach. 11).  On August 23, 2012, the EEOC mailed Ramirez a completed a Charge of Discrimination form reflecting claims of discrimination based upon sex and pregnancy, and the letter noted that "[b]efore we initiate an investigation, we must receive your signed Charge of Discrimination (EEOC Form 5).  Please sign and return the charge within thirty (30) days from the date of this letter."  (Smith Decl. Attach. 8-10).  When a representative of the EEOC spoke with Ramirez about the status the

---

[6] In support of their argument that Ramirez had exhausted her administrative remedies, Plaintiffs rely on *Lukic v. Eisasi Corp. of North America, Inc.*, 919 F. Supp. 2d 936 (W.D. Tenn. 2013). (Pls.' Resp. Mot. Summ. J. 18).  Besides misidentifying the court from which that decision arose, Plaintiffs misstate the relevant holding of that case.  The district court there held that the plaintiff had failed to exhaust her administrative remedies because she had failed to reference a claim of sex discrimination in the charge.  *See id.* at 944-95.  Unlike Ramirez, however, that plaintiff did file a charge with the EEOC.  *See id.* at 944.  Thus, notwithstanding Plaintiffs' mischaracterization of the holding in *Lukic*, that decision does not support Plaintiffs' position.

EEOC Form 5 on September 27, 2012, Ramirez indicated that she was refusing to sign any form on the advice of counsel and was awaiting a right-to-sue letter. (Smith Decl. Attach. 4). On that same day, the EEOC issued its Dismissal and Notice of Right indicating that the EEOC was "unable to conclude that the information obtained establishes violations of statutes." (Smith Decl. Attach. 1).

To determine whether Ramirez satisfied the initial requirement of filing a charge with the EEOC, the Court must consider what constitutes a charge. While Title VII does not define the term, the Sixth Circuit has looked to Supreme Court precedent and applicable regulations, and has stated:

> [I]n order for an EEOC filing to constitute a "charge" that is necessary to exhaust an employee's administrative remedies under Title VII, the filing (1) *must be "verified"—that is, submitted under oath or penalty of perjury*; (2) must contain information that is "sufficiently precise to identify the parties, and to describe generally the action or practices complained of,"; and (3) . . . an "objective observer" must believe that the filing "taken as a whole' suggests that the employee 'requests the agency to activate its machinery and remedial processes."

*Williams v. CSX Transp. Co.*, 643 F.3d 502, 509 (6th Cir. 2011) (emphasis added) (internal citations omitted) (citation omitted). *See also* 42 U.S.C. § 2000e-5(b) (stating that a charge must be "in writing under oath or affirmation . . . ."); 29 C.F.R. § 1601.9 ("A charge shall be in writing and signed and shall be verified."). The applicable regulations allow the amendment of a charge "to cure technical defects or omissions, including failure to verify the charge . . . ." 29 C.F.R. § 1601.12(b). *See also Blackburn v. Shelby Cty.*, 770 F. Supp. 2d 896, 918 n.14 (W.D. Tenn. 2011) ("The plain text of the regulation, through its use of the definite article, indicates that an amendment corrects the deficiencies in the charge that it amends . . . .").

In this case, it is undisputed that Ramirez never verified the charge prepared by and sent to her by the EEOC. While she did sign the Intake Questionnaire, there is nothing on that form

reflecting that her signature was "sworn to or affirmed" or "supported by an unsworn declaration in writing under penalty of perjury." 29 C.F.R. § 1601.3(a). Likewise, there is nothing in the record to reflect that Ramirez subsequently took steps to rectify her failure to verify the charge, and as noted above, she specifically refused to sign it on the advice on counsel. Therefore, because Ramirez did not comply with the requirements for her EEOC charge, she failed to exhaust her administrative remedies.[7] *See Sorrell v. Home Depot U.S.A., Inc.*, No. 00-1188, 2002 WL 1397244, at *2 (W.D. Tenn. Jan. 2, 2002) ("Defendant argues that Plaintiff's letter was unverified and could not constitute a charge. Plaintiff argues that the two pages should be read together to constitute one document, signed by Plaintiff with full knowledge of the penalty of perjury. Accordingly, the issue is whether a signature on a letter requesting a change in a charge form can constitute a verification when the letter does not indicate that the letter was signed under penalty of perjury. The court holds that it cannot.").

Even if the Court were to conclude that Ramirez had satisfied the verification requirement, there was no meaningful investigation of her allegations. As reflected by the EEOC's file, Defendant was never afforded the opportunity to respond to Ramirez's allegations to the EEOC, and in the less than sixty days that passed from the date of the Intake Questionnaire to the right to sue letter, the EEOC never undertook an investigation of Ramirez's allegations of discrimination because of her failure to sign the EEOC Form 5.

---

[7] Some courts have deemed a charging party's failure to verify the charge as not being fatal when the employer responds to the charge without objection and the EEOC conducts its investigation. *See Davenport v. Ashbury, Inc.*, No. 3:12-CV-445, 2013 WL 1320696, at *12 (E.D. Tenn. Mar. 29, 2013) ("Some courts have held that the verification requirement is subject to waiver."). *See also Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) ("[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."). In the case sub judice, however, Defendant never had an opportunity to respond to the allegations because of Ramirez's refusal to verify the EEOC Form 5, and it cannot be said that Defendant waived the verification requirement.

16

The Supreme Court has explained that "[i]n Title VII Congress set up an elaborate administrative procedure, implemented through the EEOC, that is designed to assist in the investigation of claims of . . . discrimination in the workplace and to work towards the resolution of these claims through conciliation rather than litigation." *Patterson v. McLean Credit Union*, 491 U.S. 164, 180-81 (1989), *superseded by statute on other grounds as recognized by CBOCS W., Inc. v. Humphries*, 553 U.S. 442 (2008) (citing 42 U.S.C. § 2000e-5(b)). *See also Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004) ("Undoubtedly, federal employees who allege that they have been victims of discrimination must exhaust their administrative remedies. The purpose of the requirement is to trigger an investigation, which gives notice to the alleged wrongdoer of its potential liability and enables the EEOC to initiate conciliation procedures in an attempt to avoid litigation." (internal citations omitted) (citation omitted)). "[A]s [the Sixth] Circuit has emphasized, [v]oluntary compliance is Title VII's preferred method for promoting the goal of nondiscrimination; it is also the reason for the EEOC's existence." *White v. N. Mich. Reg'l Hosp.*, 659 F. Supp. 2d 858, 873 (W.D. Mich. 2009) (internal quotation marks omitted) (quoting *Steiner v. Henderson*, 354 F.3d 432, 437 (6th Cir. 2003)). Similarly, as a sister court has explained, the EEOC's "administrative remedies . . . are part of a carefully designed, integrated framework which combines investigation, conference and conciliation, and lastly— only if it is unavoidable, *after* the other processes have been fully tried—litigation. Aggrieved persons cannot pick and choose which components of the system they will allow to operate." *Id.* at 874. *See also Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 731-32 (6th Cir. 2006) ("This requirement exists so that the EEOC will have an opportunity to convince the parties to enter into voluntary settlement, which is the preferred means of disposing of such claims." (citing *Parsons v. Yellow Freight Sys., Inc.*, 741 F.2d 871, 873 (6th Cir. 1984))).

By refusing to verify the charge, Ramirez effectively thwarted the EEOC's responsibility to act "'as an efficient conciliator', which is 'central to Title VII's statutory scheme.'" *White*, 698 F. Supp. 2d at 956 (quoting *Gavette v. Brady*, No. 92-2134, 1993 WL 384902, at *2 (6th Cir. Sept. 28, 1993)). *See also Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1311 (10th Cir. 2005) ("Perfect cooperation with the EEOC is not required. Rather, a claimant must merely cooperate as part of a good faith attempt to allow the EEOC a reasonable opportunity to reach the merits of his or her charge. It is only when a plaintiff's non-cooperation effectively prevents the EEOC's investigation and conclusion efforts such that the EEOC proceeding essentially becomes a sham or meaningless proceeding that a charging party's non-cooperation will amount to a failure to exhaust administrative remedies." (internal citation omitted)). Because Ramirez failed to participate in good faith in the administrative process, she failed to exhaust her administrative remedies.

For these reasons, Ramirez failed to exhaust her administrative remedies on the federal claims under Title VII and Title I of the ADA. Summary judgment will be granted dismissing these claims.[8]

### 2. *Pregnancy Discrimination*

Plaintiffs have alleged that Defendant discriminated against Ramirez on the basis of her pregnancy in violation of the KCRA. (1st Am. Compl. ¶¶ 54-56). Under the KCRA, it is illegal for employers "[t]o fail or refuse to hire, or to discharge any individual, or otherwise to

---

[8] Kentucky courts have consistently construed claims under the KCRA as being synonymous with claims under Title VII and rely on federal case law in addressing claims under the KCRA. *See Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492, 495 (Ky. 2005). Thus, even if Ramirez had appropriately exhausted the federal administrative remedies with respect to her federal claims, analysis of the merits of those claims would be identical to the state law claims.

discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's . . . sex . . . ." KRS 344.040(1)(a).

To prove a pregnancy discrimination claim, a plaintiff may rely on direct or circumstantial evidence. *See Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 648-49 (6th Cir. 2012) (citing *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004)). As the Sixth Circuit has explained:

> Direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions. Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred.

*Id.* at 649 (internal quotation marks omitted) (internal citation omitted) (citation omitted).

There is arguably direct evidence of discrimination in this case. As the Sixth Circuit has noted, "[v]ery few cases exist to provide guidance on direct-evidence analysis in the arena of employment discrimination." *DiCarlo*, 358 F.3d at 416, *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009). "This is probably because 'direct evidence of discrimination—a "smoking gun" attesting to a discriminatory intent, . . . is typically unavailable . . . .'" *EEOC v. J. Alexander's Rest., Inc.*, No. 3:04-0839, 2005 WL 2338791, at *4 (M.D. Tenn. Sept. 23, 2005) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 76 (2d Cir. 2000)). In this case, Defendant maintains that her transfer was due to Ramirez's refusal to lift; Plaintiffs point to an alleged statement made by Evans that the transfer was for the safety of Ramirez's unborn child. This evidence creates a genuine issue of material fact precluding summary judgment.

Assuming arguendo that there were no direct evidence, Plaintiffs could still attempt to prove this claim through circumstantial evidence and rely on the *McDonnell Douglas* burden-

shifting framework. *See Inwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 544 (6th Cir. 2008) (citations omitted). Under *McDonnell Douglas*, a plaintiff must meet her initial burden of proving a claim of discrimination. *See EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 860 (6th Cir. 1997). If the plaintiff's burden is met, the employer must then present evidence that it had a legitimate, nondiscriminatory reason for its employment action. *See id.* Once the employer meets that burden, "the plaintiff must then demonstrate by a preponderance of the evidence that the legitimate reason offered by the defendant was not its true reason, but instead was a pretext designed to mask [discrimination]." *Inwalle*, 515 F.3d at 544 (citing *Avery Dennison Corp.*, 104 F.3d at 862).

### a. Prima Facie Case

For Plaintiffs to prove a prima facie case of pregnancy discrimination, they must show that: "1) [Ramirez] was pregnant, 2) she was qualified for her job, 3) she was subjected to an adverse employment decision, and 4) there is a nexus between her pregnancy and the adverse employment decision." *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 658 (6th Cir. 2000) (citation omitted). Ramirez was pregnant at the time she transferred positions and the new job resulted in a reduction of $1.50 per hour in pay and reduced work hours, which qualify as an adverse employment decision. Accordingly, there is sufficient evidence to prove the first and third elements of the prima face case.

The second element requires that Plaintiffs prove Ramirez was qualified for her position. Employers must treat pregnant employees "the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work." *Bergman v. Baptist Healthcare Sys., Inc.*, 167 F. App'x 441, 445 (6th Cir. 2006) (internal quotation marks omitted) (quoting 42 U.S.C. § 2000e(k)). Plaintiffs contend that Ramirez never refused to lift residents,

which Defendant asserts was the basis for the transfer. Construing the evidence in the light most favorable to Plaintiffs, Plaintiffs have satisfied their burden to show that Ramirez was qualified for the position.

### b.    Employer's Burden

Because Plaintiffs met their burden, Defendant then has the burden of proving a legitimate, non-discriminatory reason for its decision to transfer Ramirez to a CNA position in the personal-care side of Hearthstone Place. *See Avery Dennison Corp.*, 104 F.3d at 860. The record reflects that lifting patients was an essential function of the CNA position on the skilled side of Hearthstone Place. (Evans Decl. ¶ 4, DN 71-3; Kemp Decl. ¶ 7; Kemp Decl. Ex. C). Thus, Defendant has met its burden of articulating a legitimate, non-discriminatory reason for the transfer.

### c.    Pretext

Because Defendant met its burden, Plaintiffs have the ultimate burden of proving pretext. *See Inwalle*, 515 F.3d at 544. "A plaintiff can refute the legitimate, nondiscriminatory reason that an employer offers to justify an adverse employment action by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Grace v. USCAR*, 521 F.3d 655, 677 (6th Cir. 2008) (internal quotation marks omitted) (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003)).

In this case, there is conflicting evidence as to whether Ramirez ever refused to lift residents during her pregnancy and whether Defendant's reason for the transfer was the pregnancy, which cannot be resolved through summary judgment. Accordingly, the Court will deny Defendant's motion for summary judgment on Plaintiffs' pregnancy discrimination claim.

### 3.    *Sex or Gender Discrimination*

In the First Amended Complaint, Plaintiffs assert a claim of sex or gender discrimination in violation of the KCRA.  (1st Am. Compl. ¶¶ 37-43).  In responding to Defendant's summary judgment motion, however, Plaintiffs did not address this cause of action.

"Federal Rule of Civil Procedure 56(e) requires that the nonmoving party's response designate specific facts demonstrating the existence of genuine issues of material fact."  *Spurlock v. Whitley*, 79 F. App'x 837, 839 (6th Cir. 2003) (citing Fed. R. Civ. P. 56(e)).  As the Sixth Circuit has noted, "[t]he nonmoving party is deemed to have waived its opportunity to designate facts in accordance with Rule 56(e) when it fails to properly file a response.  . . . [I]t is not the role of the district court to develop facts for the nonmoving party."  *Id.* (internal citation omitted) (citing *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 406 (6th Cir. 1992)).  Plaintiffs have waived this claim by failing to address it in their response.  Summary judgment will be granted on this claim.

### 4.    *Disability Discrimination*

Plaintiffs have also asserted a claim of disability discrimination in violation of the KCRA.  (1st Am. Compl. ¶¶ 64-66).  In particular, Plaintiffs allege that Defendant perceived Ramirez as being disabled.  (1st Am. Compl. ¶ 65).

Based on the allegations in the Amended Complaint, however, Defendant is entitled to judgment as a matter of law on this claim.  As the Sixth Circuit has held, "[b]ecause pregnancy is not a disability under the ADA, [an] [employer]'s belief that [the employee] was pregnant cannot support her 'regarded as' claim."  *Latowski v. Northwoods Nursing Ctr.*, 549 F. App'x 478, 487 (6th Cir. 2013) (citing *Spees v. James Marine, Inc.*, 617 F.3d 380, 396 (6th Cir. 2010)).  Likewise, there is no case law interpreting the KCRA differently than the ADA on this issue.

*See also Brohm v. JH Props., Inc.*, 149 F.3d 517, 520 (6th Cir. 1998) ("[T]he language of the Kentucky Civil Rights Act mirrors the language of both the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act. Both acts forbid discrimination on the basis of disability." (internal citations omitted) (citing *Maddox v. Univ. of Tenn.*, 62 F.3d 843, 846 n.2 (6th Cir. 1995))). Thus, the Court will grant summary judgment in favor of Defendant on this claim.

### 5. *Interference with FMLA Rights*

Plaintiffs claim that Defendant unlawfully interfered with Ramirez's rights under the FMLA. The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" under the FMLA. 29 U.S.C. § 2615(a)(1). In this case, Plaintiffs have alleged:

> 68. Defendant interfered with Plaintiff's right to FMLA leave by not extending to Plaintiff all the legally entitled to protections under the FMLA leave, without reprisal, intimidation, or other retaliatory action by Defendant.
> 69. Defendant's conduct constitutes unlawful interference with leave rights under the Family and Medical Leave Act . . . .

(1st Am. Compl. ¶¶ 68-69). Because Plaintiffs have presented no direct evidence to support this claim, and consistent with other discrimination claims, the *McDonnell Douglas* burden-shifting framework applies. *See Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006) (citing *Skrjanc .v Great Lakes Power Serv. Co.*, 272 F.3d 309, 313-16 (6th Cir. 2001)).

To prove a prima facie case of interference with FMLA rights, Plaintiffs must prove:

> (1) [Ramirez] was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of her intention to take leave; and (5) the employer denied the employee FMLA benefits to which she was entitled.

*Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012) (quoting *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006)). The record reflects that Ramirez was an eligible

employee under the FMLA, that she requested leave, and that she was granted leave for the birth

of her child. (Kemp Decl. Ex. J). Defendant concedes that it meets the definition of an employer

under the FMLA. (Def.'s Mot. Summ. J. 24). Thus, the only element in dispute is whether

Defendant denied Ramirez any FMLA benefits.

Under the FMLA:

> Qualifying employees who return to work within the 12-week period of their
> unpaid medical leave are entitled to be restored to "the position of employment
> held by the employee when the leave commenced," or "to an equivalent position
> with equivalent employment benefits, pay, and other terms and conditions of
> employment."

*Grace*, 521 F.3d at 669 (quoting 29 U.S.C. § 2614(a)(1)). In addition, the FMLA regulations

note that the "FMLA does not prohibit an employer from accommodating an employee's request

to be restored to a different shift, schedule, or position which better suits the employee's personal

needs on return from leave, or to offer a promotion to a better position." 29 C.F.R. §

825.215(e)(4). Thus, under the FMLA, "[a]n employee has no greater right to reinstatement or

to other benefits and conditions of employment than if the employee had been continuously

employed during the FMLA leave period." *Id.* § 825.216(a).

To determine whether Defendant denied Ramirez FMLA benefits, the Court must

consider the positions that Ramirez held immediately before and after she took FMLA leave. At

the time of leave, she was working part-time as a personal-care aide earning an hourly wage of

$7.25, which increased to $7.35 after her annual performance review. (Kemp Decl. ¶ 16). After

leave, Ramirez elected to be transferred back to a part-time position[9] on the skilled-care side of

---

[9] Lyon provided conflicting statements regarding whether Ramirez returned to a full-time
position following the FMLA leave. (Lyon Dep. 31:9-14; Lyon Aff. ¶ 11, DN 127-5).
Construing Lyon's testimony in the light most favorable to Plaintiffs, Ramirez was placed in a
part-time position following her FMLA leave.

the facility making $8.75 per hour and working the Baylor program,[10] but she was also offered a personal-care position identical to her pre-leave job. (Kemp Decl. ¶ 21; Kemp Dep. 117:6-8). Thus, Ramirez was offered and accepted a better position after she returned from leave. (Kemp Dep. 113:15-114:4). Because there is a lack of evidence that Ramirez was denied any benefits under FMLA,[11] Plaintiffs have failed to prove a claim of FMLA interference, and summary judgment for Defendant is warranted. *See Kovaco v. Rockbestos-Surprenant Cable Corp.*, 979 F. Supp. 2d 252, 261 (D. Conn. 2013).

### 6. *Retaliation under FMLA*

Plaintiffs maintain that Defendant retaliated against Ramirez for exercising her rights under the FMLA. (1st Am. Compl. ¶¶ 70-74). The FMLA prohibits employers from "discharg[ing] or in any other manner discriminat[ing] against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). Plaintiffs have alleged a claim of retaliation as follows:

> 71. Defendant's conduct constitutes unlawful intentional retaliation under the Family and Medical Leave Act . . . .
> 72. Plaintiff engaged in statutorily protected conduct of requesting and taking leave, said leave which was FMLA-protected, and under the Family and Medical Leave Act . . . .

---

[10] Based on the chart provided by Plaintiffs' counsel, Ramirez's Baylor program hours fluctuated between four and sixteen hours per two-week pay period in 2011. (Powell Aff. Ex. 1-J, DN 182-2). In 2012, Ramirez did not have any Baylor program hours until after she returned from FMLA leave, and those hours ranged from zero to sixteen hours per pay period. (Powell Aff. Ex. 1-J). In 2013, Ramirez's Baylor program hours were either eight or sixteen hours per pay period. (Powell Aff. Ex. 1-J). Thus, prior to the FMLA leave in the 2012 calendar year, Ramirez was not working any Baylor program hours, but she chose to work Baylor program hours after she returned from FMLA leave.

[11] When Ramirez returned from her FMLA leave and was transferred to the skilled side of the facility, Defendant did not initially pay her a $0.10 per hour raise. (Kemp Decl. ¶¶ 21-22). After the mistake was discovered, Defendant was paid the back pay owed between September and October 2012. (Kemp Decl. ¶ 22).

73.     Defendant retaliated against Plaintiff by causing Plaintiff the following adverse employment actions because Plaintiff asked for FMLA leave[:] (a) issuing reprimands[;] (b) counseling Plaintiff[;] and (c) firing the Plaintiff.

74.     There was a causal connection between said adverse employment actions taken and Plaintif's engagement of the statutory protected conduct.

(1st Am. Compl. ¶¶ 71-74).   Absent direct evidence to support this claim, the *McDonnell Douglas* burden-shifting framework applies to this claim.   *See Edgar*, 443 F.3d at 508 (citing *Skrjanc*, 272 F.3d at 313-16).

### a.     Prima Facie Case

To prove a prima facie case of retaliation under the FMLA, Plaintiffs must present evidence that:

> (1) [Ramirez] was engaged in an activity protected by the FMLA; (2) the employer knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.

*Killian*, 454 F.3d at 556 (citing *Arban v. West Publ'g Corp.*, 345 F.3d 390, 404 (6th Cir. 2003)). A plaintiff must prove his or her prima facie case by a preponderance of the evidence.   *See Wysong v. Dow Chem. Co.*, 503 F.3d 441, 447 (6th Cir. 2007) (citation omitted).

It is undisputed that Ramirez took FMLA leave for the birth of her child beginning in July 9, 2012, and was cleared to return to work on September 15, 2012.  (1st Am. Compl. ¶¶ 27-28; Kemp Decl. ¶¶ 15, 20-21; Kemp Decl. Ex. J).  There is no question that Ramirez engaged in a protected activity of which Defendant was aware.

The third element—an adverse employment action—is less clear because Plaintiffs' response to the motion does little to clarify the specific employment actions upon which this claim is based other than the termination.  The evidence reflects, however, that Ramirez notified her employer of the need to take FMLA leave on April 19, 2012.  (Kemp Decl. ¶ 15; Kemp Decl.

Ex. J).  Ramirez's transfer and reduction in pay occurred less than a month later, which would constitute an adverse employment action.[12]  (Kemp Dep. 93:3-15; Kemp Decl. ¶ 16; Evans Decl. ¶¶ 9-10).  Ramirez's termination in 2012 would also constitute an adverse employment action.

"To establish the causal connection required to satisfy the fourth prong of her *prima facie* case, [the employee] must produce sufficient evidence from which an inference could be drawn that her protected activity was a but-for cause of the alleged adverse action by her employer." *Woida*, 4 F. Supp. 3d at 899 (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013)).  Ramirez was terminated approximately one year after she requested her FMLA leave, which is too remote in time to suggest any causal connection between her FMLA and her later termination.  *See Son v. Baptist Healthcare Affiliates, Inc.*, No. 3:14-CV-337-GNS, 2015 WL 5305235, at *4 (W.D. Ky. Sept. 10, 2015) (holding that a period of one year is too remote to rely upon temporal proximity).  In contrast, Ramirez's transfer and reduction in pay less than a month after engaging in the protected activity of requesting FMLA leave creates an inference of discrimination that it was caused by Ramirez's engagement in a protected activity—particularly in light of the disputed reasons for the transfer.  Thus, Plaintiffs have proven a prima facie case of retaliation relating to Ramirez's transfer and reduction in pay.

---

[12] Plaintiffs specifically point to the write-up on May 21, 2012, that was given when Ramirez failed to notify a family of a resident's refusal of care.  (Pls.' Resp. Mot. Summ. J. 33).  Besides that write-up and prior to the incident involving the soiled resident, there were additional write-ups for:  (i) failing to notify the family of a resident's refusal (May 21, 2012); (ii) leaving her shift early (May 25, 2012); (iii) issues of resident privacy and discussing facility issues with residents (May 30, 2012); and (iv) calling-in and failing to work on two consecutive days (November 24-25, 2012).  (Kemp Decl. ¶¶ 18-19, 23; Kemp Decl. Exs. K-L, N).  "The Sixth Circuit has consistently held that *de minimis* employment actions are not materially adverse and, thus, not actionable."  *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000) (citations omitted).  Plaintiffs have not explained how these write-ups constitute materially adverse employment actions; rather, the documentary evidence indicates that these write-ups were *de minimis* in nature.

### b.    Employer's Burden

Because Plaintiffs have met their burden, the burden then shifts to Defendant to articulate a legitimate, nondiscriminatory reason for the transfer.  *See Gates v. U.S. Postal Serv.*, 502 F. App'x 485, 489 (6th Cir. 2012) (citation omitted).  As discussed previously, the parties strenuously disagree as to the impetus for Ramirez's transfer and reduction in pay.  At this stage, however, Defendant's stated reason—that Ramirez refused to lift residents—is sufficient to satisfy its burden.

### c.    Pretext

Since Defendant has articulated a legitimate, nondiscriminatory reason for the transfer, Plaintiffs have the burden of proving that the proffered reason was a pretext for discrimination. *See Gates*, 502 F. App'x at 489 (citation omitted).  Given the conflicting evidence about the circumstances giving rise to Ramirez's transfer and reduction in pay, a reasonable jury could find that Defendant's stated reasons for that adverse employment action were a pretext and in retaliation for Ramirez exercising her rights under the FMLA.  Accordingly, the Court will deny summary judgment on this claim.

### 7.    *Retaliation under KCRA*

Plaintiffs have also asserted a claim for retaliation in violation of the KCRA.  (1st Am. Compl. ¶¶ 75-78).  Under the KCRA, it is unlawful "[t]o retaliate or discriminate in any manner against a person because [she] has opposed a practice declared unlawful by this chapter, or because [she] has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this chapter . . . ."  KRS 344.280(1).

In the Amended Complaint, Plaintiffs allege:

76.    The Defendant retaliated against Plaintiff because Plaintiff refused to get a back dated doctors excuse placing her on restrictions, and refused to sign the

employee reprimand that was filed against her, the day after the May 25, 2012 conversation, laying out her choices.

77.     Defendant retaliated against Plaintiff after she requested accommodation under the Kentucky Civil Rights Act . . . on the basis of good-faith belief of disability involving Plaintiff's medical condition, including K.R.S. 344.040, namely firing Plaintiff.

78.     There was a casual [sic] connection between said adverse employment[.]

(1st Am. Compl. ¶¶ 76-78). Save Plaintiffs' naked allegations, the evidentiary record does not support this claim. In fact, Plaintiffs' counsel asserted at oral argument that Ramirez was fully able to do her job and *never* requested any accommodation.

To prove a prima facie case of retaliation under the KCRA, Plaintiffs must prove: "(1) [Ramirez] . . . engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against the employee, and (4) there was a causal connection between the protected activity and the adverse employment action." *Banks v. Bosch Rexroth Corp.*, 15 F. Supp. 3d 681, 693 (E.D. Ky. 2014) (internal quotation marks omitted) (quoting *Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 436 (6th Cir. 2009)). In this case, Plaintiffs have failed to prove a prima facie case because the proof in the record does not establish what activity protected by the KCRA Ramirez supposedly engaged in to support this claim. The only such action was Ramirez's notice related to her pregnancy, and she never requested any accommodations. Because pregnancy is not a disability, the communication was not related to any rights protected by the KCRA. Summary judgment of dismissal will be granted on this claim.

### 8.     *Wrongful Termination - Retaliation*

The final count of the Amended Complaint asserts a claim of wrongful discharge based on retaliation. (1st Am. Compl. ¶¶ 82-90). In particular, Plaintiffs allege that "Hearthstone used an unsubstantiated pretense as a reason to terminate [Ramirez's] employment, but assert[] that

the real reason for termination was in retaliation to her compliance with KRS Section 216B.165(1)." (1st Am. Compl. ¶ 90).

Kentucky follows the doctrine of at-will employment, which permits employers to terminate employees "for good cause, for no cause, or for a cause that some might view as morally indefensible." *Grzyb v. Evans*, 700 S.W.2d 399, 400 (Ky. 1985) (internal quotation marks omitted) (citation omitted). One of the two recognized exceptions to this doctrine—and the one asserted here—applies "where an employee is fired for exercising a legal right conferred by a statute." *McCown v. Gray Ky. Television, Inc.*, 295 S.W.3d 116, 118 (Ky. App. 2008) (citing *Grzyb*, 700 S.W.2d at 402).

Plaintiffs assert that on April 6, 2013, Ramirez made a report to the Kentucky Cabinet for Health & Family Services ("CHFS"), relating to Hearthstone Place pursuant to KRS 216B.165(1) and that Ramirez's subsequent termination was in retaliation for the report in violation of KRS 216B.165(3).[13] (1st Am. Compl. ¶¶ 82, 87-88, 90). In relevant part, the statute provides:

> No health care facility or service licensed under this chapter shall by policy, contract, procedure, or other formal or informal means subject to reprisal, or directly or indirectly use, or threaten to use, any authority or influence, in any manner whatsoever, which tends to discourage, restrain, suppress, dissuade, deter, prevent, interfere with, coerce, or discriminate against any agent or employee who in good faith reports, discloses, divulges, or otherwise brings to the attention of the health care facility or service the circumstances or facts to form the basis of a report under subsections (1) or (2) of this section. No health care facility or service shall require any agent or employee to give notice prior to making a report, disclosure, or divulgence under subsections (1) or (2) of this section.

KRS 216B.165(3).

---

[13] Like Plaintiffs' FMLA retaliation claim, they seek to expand the nature of the claim under KRS 216B.165 by asserting that Ramirez's contact with the EEOC also supports this claim. (Pls.' Resp. Mot. Summ. J. 37). As discussed above, it is improper for Plaintiffs to assert new theories in response to a dispositive motion, and the language of KRS 216B.165 does not provide a retaliation claim for a report to the EEOC.

### a.    Prima Facie Case

To prove their claim of retaliation, Plaintiffs must initially prove a prima facie case retaliation.  *See MacGlashan v. ABS Lincs KY, Inc.*, 84 F. Supp. 3d 595, 599 (W.D. Ky. 2015) (citing *Brooks*, 132 S.W.3d at 797).  "A plaintiff may meet this burden by showing she (1) 'engaged in a protected activity; (2) the defendant knew that the plaintiff had done so; (3) adverse employment action was taken; and (4) that there was a causal connection between the protected activity and adverse employment action.'"  *Id.* (quoting *Colorama, Inc. v. Johnson*, 295 S.W.3d 148, 152 (Ky. App. 2009)).

Based on the evidence in the record, Plaintiffs can prove the first three elements for the purpose of summary judgment.  There is evidence that Ramirez did contact CHFS to express concerns about Hearthstone Place.  While Defendant disputes whether the decision-maker was aware of Ramirez's report, there is conflicting evidence that this Court must construe in Plaintiffs' favor.[14]  Likewise, it is undisputed that Ramirez's employment was terminated.  For the purpose of the prima face case, the Court will assume that the termination occurred close enough in time to the report to CHFS for Plaintiffs to satisfy the element of causation.  *But see Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 321 (6th Cir. 2007) (noting that generally "[t]he law is clear that temporal proximity, standing alone, is insufficient to establish a causal connection for a retaliation claim."  (citations omitted)).  Accordingly, Plaintiffs have proven a prima facie claim of retaliation.

---

[14] The decision maker—Bolster—denied having confirmation that Ramirez had made a report to the CHFS until Ramirez's unemployment insurance hearing.  (Bolster Decl. ¶¶ 6-7).  A former employee, Eileen McClung, has stated, however, that she informed other members of management of Ramirez's report to CHFS.  (McClung Aff. ¶¶ 7-8, DN 127-4).

### b.  Employer's Legitimate, Nondiscriminatory Reason

Defendant has also satisfied its burden.  It has identified the incident involving the soiled resident as the reason for Ramirez's termination.  Thus, Defendant has met its burden to articulate a legitimate, nondiscriminatory reason for Ramirez's termination.  *See Brooks*, 132 S.W.3d at 797 (citation omitted).

### c.  Pretext

Because Defendant met its burden, Plaintiffs must prove pretext by a preponderance of evidence to prevail on this claim.  *See id*. (citation omitted).  As Plaintiffs have argued, there are genuine issues of material fact as to whether the incident involving the soiled resident occurred as characterized by Defendant.  A reasonable jury could conclude that Defendant used this incident as a mere pretext to terminate Ramirez before the employer even investigated the incident.  Accordingly, the motion for summary judgment will be denied on this basis.

## IV.  CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1.  Defendant's Motion for Summary Judgment (DN 71) is **GRANTED IN PART** and **DENIED IN PART**.  The following claims are **DISMISSED WITH PREJUDICE**:  Title VII of the Civil Rights Act of 1964; Title I of the Americans with Disabilities Act; sex or gender discrimination, disability discrimination, and retaliation under the Kentucky Civil Rights Act; and interference under the Family & Medical Leave Act.  This matter shall proceed to trial on the following claims:  pregnancy discrimination under the Kentucky Civil Rights Act; retaliation under the Family & Medical Leave Act; and common-law retaliation/wrongful discharge.

2.  Plaintiffs' Motion for Summary Judgment (DN 96) is **DENIED**.

3.  Defendant's Motions to Strike (DN 104, 131) are **DENIED**.

4.     Defendant's Motion for Leave to File Excess Pages (DN 107) is **GRANTED**.

5.     Plaintiffs' Motions for Leave to Resubmit (DN 125, 128) are **DENIED**.

**Greg N. Stivers, Judge**
**United States District Court**

September 21, 2017

cc:     counsel of record